**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-2083-WJM-KLM

ROBERT KIRKLAND,

      Plaintiff,

v.

DEPUTY JAMES O'BRIEN,
DEPUTY BRIAN D. JONES,
DEPUTY RAFAEL AVINA,
DEPUTY HENRY E. TRUJILLO, and
CAROLANN MAHONEY, R.N.,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Robert Kirkland ("Plaintiff") has brought this civil action against Defendant Deputies James O'Brien, Brian D. Jones, Rafael Avina, and Henry E. Trujillo (collectively "Defendant Deputies"), and Defendant Carolann Mahoney, R.N. ("Nurse Mahoney") (collectively "Defendants"), alleging constitutional violations under 42 U.S.C. § 1983.  (ECF No. 1.)  Before the Court is Defendants' Motion for Partial Summary Judgment ("Motion").  (ECF No. 56.)  For the reasons set forth below, Defendants' Motion is granted as to Nurse Mahoney, but denied as to the remaining Defendants.

## I.  BACKGROUND

The relevant facts, taken in the light most favorable to Plaintiff, are as follows, and are undisputed unless otherwise noted.

On December 3, 2011, Plaintiff was arrested for harassment and disorderly conduct, and Defendant Deputies Jones and O'Brien transported Plaintiff to the Boulder County Jail.  (Movant's Statement of Material Facts ("MSMF") (ECF No. 56) ¶¶ 1-2.) The Defendant Deputies arrived at the jail with Plaintiff at approximately 12:04 p.m., and Deputies Trujillo, Avina, and Jones proceeded to move Plaintiff into a disciplinary cell in the jail.  (MSMF ¶ 3.)  As Plaintiff was brought from the patrol car into the jail, he became verbally abusive to the Defendant Deputies.  (Statement of Additional Disputed Material Facts ("SADMF") (ECF No. 59) ¶ 20.)

The parties dispute what happened when Deputies Trujillo, Avina, and Jones took Plaintiff into the disciplinary cell.  Plaintiff avers that he was thrown face down onto the bunk and stripped of his clothing, and then some or all of the Defendant Deputies slammed his left leg against the bunk, causing an audible bone fracture.  (ECF No. 1 ¶¶ 16-18.)  Deputy O'Brien entered the cell at some point after the other three.  (MSMF ¶ 4.)  According to Plaintiff, he screamed, "You broke my leg," and one of the Defendant Deputies replied, "Now we're going to break his other leg."  (SADMF ¶ 21.)  After the Defendant Deputies left Plaintiff alone in his cell, he complained to another unidentified deputy that he needed medical attention because his leg was broken.  (SADMF ¶ 22.) The Defendant Deputies dispute the entire incident, as well as the alleged statements by both parties.  (ECF No. 56 at 2.)  However, they agree that the Defendant Deputies left Plaintiff in the disciplinary cell at approximately 2:00 p.m.  (SADMF ¶ 22.)

Some ten hours later, at approximately 12:15 a.m. on December 4, 2011, Nurse Mahoney conducted a Boulder County Sheriff's Office Confidential Medical Screening Intake of Plaintiff.  (MSMF ¶ 7; SADMF ¶ 23.)  The parties dispute what Plaintiff said to

2

Nurse Mahoney regarding his knee: Plaintiff states that he told Nurse Mahoney that his leg was broken and he needed to go to the hospital, while Nurse Mahoney states that Plaintiff said he had a sore knee.  (MSMF ¶ 8; ECF No. 59 ¶ 8.)  The parties agree that Nurse Mahoney performed a visual examination by comparing Plaintiff's knees, noted that the left knee was not discolored or disfigured, and implemented a strain/sprain protocol involving ice packs and pain medication.  (MSMF ¶¶ 9-10.)  Nurse Mahoney did not ask Plaintiff to walk or otherwise assess his gait.  (SADMF ¶ 24.)  Nurse Mahoney did not send Plaintiff to the hospital, but arranged for Plaintiff to see the jail doctor when he was next available.  (MSMF ¶ 12.)  Nurse Mahoney provided Plaintiff with a wheelchair and entered an electronic note stating that Plaintiff could not walk, and that she believed Plaintiff had a torn knee ligament.  (SADMF ¶ 30.)

On December 6, 2011, Plaintiff received x-rays by order of the Boulder County Jail staff doctor, which revealed an acute fracture of his lateral tibial plateau.  (MSMF ¶ 14.)  Based on this diagnosis, Plaintiff was given a knee brace.  (MSMF ¶ 15.)  Plaintiff was released from jail on December 12, 2011.  (MSMF ¶ 16.)  The fracture in Plaintiff's left knee was subsequently evaluated by an orthopedic surgeon as "likely to leave significant knee arthritis".  (SADMF ¶ 44.)

On August 7, 2012, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983 alleging the use of excessive force, the deprivation of liberty without due process, failure to provide adequate medical care, and First Amendment retaliation.  (Compl. (ECF No. 1).)  The only one of these claims relevant to the instant Motion is Plaintiff's Third Claim, which alleges that Defendants failed to provide adequate medical care and treatment and were deliberately indifferent to his serious medical needs in violation of

3

the United States Constitution.  (Compl. p. 8.)  On July 12, 2013, Defendants moved for

summary judgment on Plaintiff's Third Claim.  (ECF No. 56.)  Plaintiff filed a Response

to Defendants' Motion on August 16, 2013.  (ECF No. 59.)  Defendants filed their Reply

on September 17, 2013.  (ECF No. 68.)

## II.  LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem

Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute

as to a material fact depends upon whether the evidence presents a sufficient

disagreement to require submission to a jury or conversely, is so one-sided that one

party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49

(1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal

Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual

dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a

reasonable party could return a verdict for either party.  *Anderson*, 477 U.S. at 248.

The Court must resolve factual ambiguities against the moving party, thus favoring the

right to a trial.  *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## III.  ANALYSIS

Defendants argue that summary judgment is appropriate on Plaintiff's Third

Claim because the undisputed facts demonstrate that Defendants were not deliberately

indifferent to a serious medical need.  (ECF No. 56 at 4-11.)

The Supreme Court has held that "[d]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment," and states a cause of action under 42 U.S.C. § 1983.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (internal citation omitted). "Although '[p]retrial detainees are protected under the Due Process Clause rather than the Eighth Amendment, . . . [the Tenth Circuit] applies an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983.'"  *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) (quoting *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999)).

A claim of deliberate indifference to serious medical needs is rooted in "the government's obligation to provide medical care for those whom it is punishing by incarceration," where a detainee cannot access medical care through any other means. *Estelle*, 429 U.S. at 103.  In such cases, "denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose."  *Id.* Nevertheless, "[not] every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  *Id.* at 105.

Deliberate indifference to serious medical needs can be exhibited by prison medical staff in failing to properly treat a medical condition, or "by prison guards in intentionally denying or delaying access to medical care."  *Id.* at 104-05.  Where medical staff mistreat a condition, they may avoid liability by showing their conduct was "merely negligent . . . rather than deliberately indifferent," but where "the medical

professional knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill that gatekeeper role . . . he also may be liable for deliberate indifference from denying access to medical care." *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000).

To evaluate a claim for deliberate indifference to serious medical needs, a court must engage in "a two-pronged inquiry, comprised of an objective component and a subjective component." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006).  The objective prong examines whether a medical need is "'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause." *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  The subjective prong examines the state of mind of the defendant, asking whether "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

## A.   Objective Prong

In the Tenth Circuit, a serious medical need that satisfies the objective prong is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (quotation and citation omitted).

In the instant case, it is undisputed that Plaintiff's leg was injured, causing such pain that he was unable to walk, and was later diagnosed as a bone fracture likely to

produce significant arthritis.  (SADMF ¶¶ 25, 30, 42.)  From this evidence, a reasonable juror could conclude that Plaintiff had a serious medical need.  *Compare, e.g.*, *Keith v. Hines*, 2006 WL 687171, at *7 (W.D. Okla. Mar. 13, 2006) (holding that a fractured leg and delayed union of that fracture satisfied the objective prong); *with Grant v. Bernalillo Cnty. Det. Ctr.*, 173 F.3d 863 (10th Cir. 1999) (holding that plaintiff failed to satisfy objective prong because he stated only that he was "in bad pain" and alleged no harm from delay in medical care).  As a broken leg is sufficiently serious as to mandate medical treatment, this evidence satisfies the objective prong.  *See Ramos*, 639 F.2d at 575.

Defendants contend that because no physician's diagnosis had been made at the time of their alleged deliberate indifference, Plaintiff must demonstrate that his serious medical need was so obvious that a lay person would recognize his need for treatment.  (ECF No. 56 at 7.)  Because Plaintiff's knee was not discolored or deformed, Defendants argue that no lay person would have recognized his broken bone, and therefore he had no serious medical need.  (*Id.* at 8.)  This argument confuses the objective and subjective prongs of the test.  (*See id.* (citing a case evaluating a broken bone under the subjective, not objective, prong).)  The objective prong is evaluated by the actual harm the plaintiff suffered, not by the defendant's perception of the symptoms presented.[1]  *Mata*, 427 F.3d at 753.

---

[1] Even viewing the objective prong from Defendants' perspective, as Defendants appear to ask this Court to do, the Court finds that a reasonable juror could conclude that Plaintiff had a serious medical need.  Plaintiff attests that the Defendant Deputies slammed his leg against the bunk and then heard Plaintiff scream in pain, "You broke my leg".  (SADMF ¶ 21.)  Under these circumstances, Plaintiff's need for medical care should have been obvious to the Defendant Deputies.  Defendants' argument that Plaintiff's statement of injury alone is insufficient to establish a serious medical need ignores the evidence, taken as true for the purposes of the Motion, that Defendants *directly caused* that medical need and observed the

The Court finds that, viewing the evidence in the light most favorable to Plaintiff, that evidence is sufficient to permit a reasonable juror to conclude that Plaintiff's broken leg was a serious medical need that mandated treatment. Therefore, the Court finds that Plaintiff has satisfied the objective prong of the deliberate indifference test for the purposes of this Motion.

## B. Subjective Prong

The subjective prong of the deliberate indifference test requires an inquiry into whether each defendant had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (citation omitted); *see also Self*, 439 F.3d at 1230-31. To satisfy the subjective prong, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Once it is shown that the official "knew [the plaintiff] faced a substantial risk of harm," a claim for deliberate indifference requires a showing that the official "disregarded that risk by failing to take reasonable measures to abate it." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (internal citation and quotation omitted). Thus, "prison officials who 'actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Howard v. Waide*, 534 F.3d 1227, 1239 (10th Cir. 2008) (quoting *Farmer*, 511 U.S. at 844-45).

---

injury, and thus Plaintiff's claim of injury was not the sole evidence of his medical need. With respect to Nurse Mahoney, the undisputed facts show that although she misdiagnosed Plaintiff's injury, she recognized Plaintiff's need for medical care, and Plaintiff attested that he specifically informed her that he believed his leg was broken and needed a hospital. (ECF No. 59 ¶ 8.) Thus, Nurse Mahoney also had sufficient information to know that Plaintiff needed medical treatment.

1.    Defendant Deputies

Defendants argue that the Defendant Deputies did not prevent Plaintiff from seeking and receiving treatment, as Plaintiff ultimately received a medical evaluation from Nurse Mahoney.  (ECF No. 56 at 9-10.)   Defendants further argue Plaintiff has produced no evidence indicating that the Defendant Deputies knew of his medical need after leaving him in his cell.  (*Id.*)  Therefore, Defendants contend, the Defendant Deputies are only responsible for a minimal delay in Plaintiff's receiving care.  (*Id.*)

This argument ignores the Court's requirement to take all facts in the light most favorable to Plaintiff.  At the very least, there are disputed facts as to whether three of the Defendant Deputies assaulted Plaintiff, broke his leg, and attempted to break his other leg, while the fourth Defendant Deputy looked on.  Taking the evidence of this incident in the light most favorable to Plaintiff, the Defendant Deputies "knew [Plaintiff] faced a substantial risk of harm," as they purposely created that harm, and then "disregarded that risk" when they left him alone in the cell and did nothing.  *See Hunt*, 199 F.3d at 1224.  Plaintiff has attested that Deputies Trujillo, Avina, and Jones attacked Plaintiff with the intent to cause him physical harm, and Deputy O'Brien watched and knew of the attack.  It follows from this testimony that all four Defendant Deputies deliberately disregarded Plaintiff's need for medical attention due to the injuries he had suffered, and they failed to take reasonable measures to abate the harm.  Whether the attack occurred as Plaintiff has attested is a question of material fact that cannot be resolved at the summary judgment stage.

Accordingly, the Motion must be denied as to the Defendant Deputies.[2]

2.    Nurse Mahoney

Defendants argue that Nurse Mahoney was not deliberately indifferent to

Plaintiff's serious medical needs because she evaluated him and provided him with

treatment.  (ECF No. 56.)

In *Self v. Crum*, 439 F.3d 1227 (10th Cir. 2006), the Tenth Circuit reviewed its

analyses of deliberate indifference claims against medical staff in a correctional facility.

*Id.* at 1231-32.  The *Self* court noted that the subjective prong was not satisfied by

evidence that a nurse made "a good faith effort to diagnose and treat [the inmate's]

medical condition," despite failing to diagnose a heart attack.  *Id.* (quoting *Mata*, 427

F.3d at 761); *see also Sealock*, 218 F.3d at 1208, 1211, 1212 n.7 (concluding same

where a nurse misdiagnosed as flu the chest pain preceding a heart attack).  In

contrast, where the evidence showed that a nurse knew of an inmate's severe chest

pain but "did not simply misdiagnose [the inmate]; rather, she completely refused to

assess or diagnose [her] condition at all . . . [and] completely refused to fulfill her duty

as gatekeeper in a potential cardiac emergency," the Tenth Circuit held that the plaintiff

had established sufficient evidence for a reasonable juror to find deliberate indifference.

*Mata*, 427 F.3d at 758-59.

Here, Plaintiff contends that Nurse Mahoney deliberately disregarded the risk of

harm to him from his injuries when she failed to perform any tests on his knee, and

---

[2] The Court notes that although Defendants asserted qualified immunity in their Answer (ECF No. 16 at 10), they did not move for summary judgment on that defense, arguing only the merits of the alleged constitutional violation in Plaintiff's Third Claim.  (*See* ECF No. 56.) Accordingly, the Court will not address Defendants' qualified immunity defense at this juncture.

when she ignored Plaintiff's statement that he believed his leg was broken.  (ECF No. 59 at 16-17.)  The Court finds this argument insufficient to defeat summary judgment. The case law is clear that a prison medical professional's mere misdiagnosis does not violate the Constitution.  *See Self*, 439 F.3d at 1231-32.  Rather, if a medical professional who knows of and appreciates an inmate's serious risk of medical harm makes a good faith effort to assess him, even a negligent misdiagnosis is not considered deliberate indifference.  *See Mata*, 427 F.3d at 758-61.

The undisputed evidence here shows that Nurse Mahoney evaluated Plaintiff, considered his complaints, and provided him with pain medication, ice packs, a wheelchair, and a future appointment with a doctor.  (MSMF ¶¶ 9-12; SADMF ¶ 24.) Viewing these facts in the light most favorable to Plaintiff, Nurse Mahoney's failure to perform tests or provide an immediate doctor visit indicates negligence, and her belief that Plaintiff had a torn ligament rather than a broken bone was a misdiagnosis.  This misdiagnosis was made in the course of assessing Plaintiff's condition, however brief and limited that assessment was.  There is no evidence from which a reasonable juror could conclude that Nurse Mahoney's assessment was not in good faith, or that she deliberately disregarded the risk of harm to Plaintiff.  Therefore, this evidence does not satisfy the subjective prong.  *See Mata*, 427 F.3d at 758-61.

Accordingly, the Court finds that there is no dispute of material fact as to whether Nurse Mahoney was deliberately indifferent to Plaintiff's serious medical needs, and summary judgment is appropriate as to Nurse Mahoney.  As this claim was the only remaining claim asserted against Nurse Mahoney, she shall be terminated as a defendant from this action.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.      Defendants' Motion for Partial Summary Judgment is GRANTED IN PART and

DENIED IN PART;

2.      Defendants' Motion is GRANTED as to Defendant Carolann Mahoney, R.N.;

3.      Defendants' Motion is DENIED as to the Defendant Deputies;

4.      When judgment is entered, it shall be in favor of Defendant Mahoney, and she

shall be removed from the case caption in all future filings; and

5.      This action remains pending as to Plaintiff's claims against the remaining

Defendants.

Dated this 25th day of March, 2014.

BY THE COURT:

William J. Martinez
United States District Judge